UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AF HOLDINGS LLC,

    Plaintiff,

    v.

JOHN DOE, et al.,

    Defendants.
_____/

No. C 12-2049 PJH

**ORDER DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

    Plaintiff's motion for leave to amend the complaint came on for hearing before this court on November 7, 2012. Plaintiff appeared by its counsel Brett L. Gibbs, and defendant Josh Hatfield appeared by his counsel Nicholas Ranallo. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion.

## BACKGROUND

    Plaintiff AF Holdings LLC holds the copyrights to any number of "adult entertainment" videos, and has filed numerous lawsuits asserting copyright infringement against multiple "Doe" defendants, based on their alleged unlawful downloading of those videos from the Internet.

    The downloading is alleged to have been accomplished by using online peer-to-peer file-sharing tool called BitTorrent. The BitTorrent transfer protocol is a file-sharing method

1  used for distributing data via the Internet.  See, e.g., Diabolic Video Prods., Inc. v. Does 1-
2  2099, 2011 WL 3100404, at *2 (N.D. Cal. May 31, 2011).

3  Because the alleged unlawful downloading occurs behind the mask of anonymous
4  internet protocol ("IP") addresses, AF Holdings does not know the identity of the persons
5  who have utilized BitTorrent to access the copyrighted videos.  At most, AF Holdings is
6  able to identify the alleged infringers by the unique IP address assigned to the Internet
7  subscriber by the subscriber's Internet Service Provider ("ISP").  Generally, soon after filing
8  one of these lawsuits, AF Holdings requests an order authorizing limited expedited
9  discovery, so it can serve subpoenas on the ISPs in the hope of obtaining the identity of the
10 "Doe" defendants based on the IP addresses of their computers.

11 On July 7, 2011, AF Holdings filed a complaint in this district against 135 unidentified
12 "Doe" defendants (identified only by IP addresses), alleging that on either April 21, 2011 or
13 May 2, 2011, each of the 135 "Does" had infringed AF Holdings' copyright by downloading
14 a video called "Sexual Obsession."  See AF Holdings v. Does 1-135, No. C-11-3336 LHK
15 (N.D. Cal.).  On July 14, 2011, AF Holdings requested expedited discovery in order to
16 discover the identity of the subscribers associated with the IP addresses.  The request was
17 granted on August 2, 2011.  Among the IP addresses implicated in that suit was
18 67.161.66.97, which is registered to defendant Josh Hatfield ("Hatfield").

19 According to Hatfield, his ISP provided his identifying information to AF Holdings in
20 October 2011.  After obtaining this information, AF Holdings did nothing for three months –
21 although it did dismiss a number of the Does identified by certain IP addresses (but not
22 Hatfield).  On January 19, 2012, noting that more than 190 days had passed since the filing
23 of the complaint (and more than 150 days since the order authorizing expedited discovery)
24 the court issued an order to show cause why the Doe defendants should not be dismissed
25 based on AF Holdings' failure to effectuate service on any identified Doe.

26 On February 22, 2012, the court ordered AF Holdings to provide certain
27 supplementary information.  On February 28, 2012, AF Holdings filed a notice of voluntary
28 dismissal of the claims against Does identified by 19 of the IP addresses (not including the

address associated with Hatfield). On March 27, 2012, the court dismissed the case in its entirety pursuant to Federal Rule of Civil Procedure 4(m), due to AF Holdings' failure to effectuate service on any of the defendants.

Approximately four weeks later, on April 24, 2012, AF Holdings filed the present action, asserting two claims of direct copyright infringement (reproduction and distribution) and one claim of contributory infringement against an unidentified Doe defendant, and another cause of action for negligence, against Hatfield, based on Hatfield's alleged failure to secure his Internet connection against unlawful downloading by third parties.

AF Holdings alleged that the Doe defendant had performed the actual downloading and distribution, via the IP address that was registered to Hatfield, and that Hatfield "allowed" the Doe defendant to use his Internet connection to illegally download, republish, and distribute copies of the copyrighted video. However, AF Holdings did not allege any copyright infringement or contributory infringement claims against Hatfield.

After Hatfield moved to dismiss the negligence claim, AF Holdings filed a first amended complaint ("FAC"), which again asserted claims of copyright infringement against the Doe defendant, and a claim of negligence against Hatfield, based on an alleged third party's use of Hatfield's Internet connection to commit the infringement, and Hatfield's failure to secure his Internet connection and/or failure to monitor the unidentified third party's use of his Internet connection. In a footnote on page 1, AF Holdings stated that "[a]t this stage of the litigation, [p]laintiff does not know if [d]efendant Doe is the same individual as Josh Hatfield." FAC at 1, n.1.

On June 30, 2012, Hatfield moved to dismiss the negligence claim asserted in the FAC. In its opposition, filed July 16, 2012, AF Holdings asserted that it had not alleged that Hatfield knowingly facilitated and actively participated in anyone's infringement, but rather that Hatfield was a "concededly ignorant but alleged careless defendant." AF Holdings argued that its claim against Hatfield was purely based on a theory of negligence and a duty to secure one's Internet connection.

On September 4, 2012, the court issued an order granting the motion, on the basis

United States District Court
For the Northern District of California

that an allegation of non-feasance (failure to secure Internet connection) cannot support a claim of negligence in the absence of facts showing the existence of a special relationship; and that the negligence claim was preempted by the Copyright Act. Finding that amendment would be futile, the court dismissed the negligence claim with prejudice. Since that was the only claim asserted against Hatfield, he was effectively dismissed from the case (although the order framed the issue solely in terms of dismissal of the negligence cause of action).

The order added that with regard to the Doe defendant, more than 120 days had passed since the case had been filed, and there was no indication in the docket that the Doe defendant had been served and no request for expedited discovery to learn the Doe defendant's identity had been filed. The court ordered AF Holdings to file a proof of service no later than October 4, 2012, showing service on the Doe defendant, and stated that if the proof of service was not filed by that date, the case would be dismissed under Rule 4(m).

AF Holdings did not file a proof of service. However, on September 28, 2012, it filed the present motion for leave to file a second amended complaint ("SAC"), to allege two claims of copyright infringement (reproduction and distribution) and a claim of contributory infringement against Hatfield (who was no longer in the case as of the date of the order dismissing the sole claim asserted against him in the FAC).

The proposed SAC did not name a Doe defendant. However, with the exception of having no Doe defendant and no cause of action for negligence, it was almost entirely identical to the FAC. The primary difference was that every incidence of "Doe defendant" in the FAC had been replaced by "defendant" or "defendant Hatfield" in the proposed SAC.

At the November 7, 2012 hearing, the court advised counsel for AF Holdings that he would have to persuade the court that he had discovered additional evidence, based on the same identification of a defendant that he had known about for more than a year. The court gave counsel one week to submit a revised proposed SAC that demonstrated diligence and that supported the alleged "new facts" asserted by counsel. The court also

4

1 indicated that it would prefer to resolve the case on the merits, rather than simply
2 dismissing it for failure to serve, but that its concern was with lack of diligence on the part of
3 AF Holdings, and whether the alleged "new facts" were sufficient to state a claim.

4     On November 14, 2012, AF Holdings filed a revised proposed SAC.  The revised
5 SAC is identical to the prior proposed SAC, except that it includes a section headed
6 "Plaintiff's Further Investigation of Defendant."  In this section, AF Holdings alleges that it

7     –     initiated an online Internet investigation on September 8, 2012, which
8 "determined [d]efendant's general online presence," from which AF Holdings "concluded"
9 that Hatfield had "a large Internet presence" and that "that presence demonstrated
10 [d]efendant's knowledge of computers and the Internet," Revised Proposed SAC ¶ 30;

11     –     located a Facebook page "purportedly attributed to a Josh Hatfield
12 living in the Bay Area fitting the age range of [d]efendant," which stated that the individual
13 "likes" movies – "pretty much any movie," id. ¶ 31;

14     –     located a MySpace page "purportedly attributed to a Josh Hatfield
15 living in the Bay Area fitting the age range of [d]efendant," stating that the individual "goes
16 by the moniker 'Mistah HAT' and has pictures of his various activities including, but not
17 limited to, playing video games," id. ¶ 32;

18     –     conducted a search on September 8, 2012 relating to Hatfield's
19 address (assertedly an 8-unit apartment building on Lenox Ave. in Oakland), and
20 discovered a "recent" listing by a real estate agent for an apartment in that building that
21 was advertised as being available on 3/1/12, id. ¶ 33 (including lengthy quotation from
22 rental ad);

23     –     called the agent who had listed the rental and left a message, but
24 never received a call back, id. ¶ 34;

25     –     was able to obtain no information about Hatfield's neighbors or
26 whether he in fact had any neighbors, id. ¶ 34;

27     –     conducted "more research" on September 8, 2012 regarding the
28 building's "other potential residents," which indicated that "while a residential building, it had

5

a few tenants who were running their businesses out of their units," id. ¶ 35;

– performed a "skip trace" on Hatfield on October 9, 2012, and discovered that he was 33 years old, was in fact living at the Lenox Ave. address, was living with a 30-year old female with a different last name, and that "[t]here was no indication that the two were married," id. ¶¶ 36-37;

– discovered "on or around the same time" that Hatfield has a criminal record, based on offenses that occurred in Oregon in 1999 and 2001, although "[t]he actual violation charged [is] unclear," id. ¶ 38;

– found "no evidence" that Hatfield has "a wireless Internet network" or that "if such wireless Internet connection existed, that such network was unsecured (i.e., without password protection)," id. ¶ 39;

– searched the court's docket in this case and found no "declaration under oath" from Hatfield stating that "he had not infringed on" AF Holdings' work, id. ¶ 40.

Based on the above, AF Holdings asserts that it had "a good faith basis to name Josh Hatfield as the infringing [d]efendant in this case," in view of the fact that Hatfield was the subscriber assigned to the IP number 67.161.66.97 by his ISP in April 2011, and "was the only person with direct access to the account during this period," and also "considering that any then unknown or unconfirmed information would bear out through the discovery process." Id. ¶ 41.

**DISCUSSION**

A.  Legal Standard

Federal Rule of Civil Procedure 15 requires that a plaintiff obtain either consent of the defendant or leave of court to amend its complaint once the defendant has answered, but "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also, e.g., Chodos v. West Pub. Co., 292 F.3d 992, 1003 (9th Cir. 2002) (leave to amend granted with "extreme liberality"). The Ninth Circuit has held that discovery of new facts after a complaint was filed may warrant granting leave to amend. Wittmayer v. United States, 118 F.2d 808, 809 (9th Cir. 1941).

The effect of this policy of granting motions to amend with "extreme liberality" is that the moving party need only a reason why amendment is required, and the burden then shifts to the opposing party to convince the court that "justice" requires denial. See, e.g., DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987). Leave to amend is thus ordinarily granted unless the amendment is futile, would cause undue prejudice to the defendants, or is sought by plaintiffs in bad faith or with a dilatory motive. Foman v. Davis, 371 U.S. 178, 182 (1962); Smith v. Pacific Properties and Dev. Corp., 358 F.3d 1097, 1101 (9th Cir. 2004). In addition, amendments seeking to add claims are to be granted more freely than amendments adding parties. Union Pacific R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991).

B.   Plaintiff's Motion

AF Holdings asserts that, "after further investigation since filing its [FAC]," it has "a reasonable basis to name and serve [d]efendant Hatfield as the direct and contributory infringer in this case." Specifically, AF Holdings claims that since filing the FAC, it has "discovered new information about [Hatfield's] interactions on the computer and living situation (among other things)," which information it asserts allows it to have "a good faith basis to name Josh Hatfield as the infringing [d]efendant in this case."

AF Holdings contends that the motion is timely, and that in order to respond to the court's order requiring filing of a proof of service showing service on the Doe defendant, it must first must file an amended complaint to name the infringer.

AF Holdings argues that there is no prejudice to Hatfield, because as of this date the court has not held a case management conference, and has set no deadline for requesting leave to amend the pleadings. AF Holdings also asserts that it is acting in good faith in seeking to amend the complaint.

In opposition, Hatfield argues that the case should be dismissed pursuant to Rule 41(b) for failure to prosecute and failure to comply with the court's order to file a proof of service on the Doe defendant; and second, that leave to amend should be denied. At the hearing, the court denied the motion to dismiss, and also denied a motion filed by AF

7

Holdings to strike the opposition.

With regard to the motion for leave to amend, Hatfield argues that AF Holdings' bad faith is "evident." He asserts that AF Holdings has strung him along for months on the premise that it was unaware of the identity of the infringer, and was unable to determine the identity without formal discovery – and indeed, filed two complaints based on this position. In addition, Hatfield notes that AF Holdings filed an opposition to the prior motion to dismiss the FAC, in which it explicitly stated that Hatfield was "concededly ignorant" regarding the alleged infringement.

Nevertheless, Hatfield asserts, on September 4, 2012, only a few hours after the court issued the order dismissing the negligence cause of action, counsel for AF Holdings sent an email threatening to sue him as the infringer unless he agreed to pay a particular settlement demand. Given AF Holdings' prior position that Hatfield had no knowledge of the alleged infringement, and its failure to sue him for copyright infringement, Hatfield contends that this email, sent mere hours after the court dismissed the negligence claim, constituted an "improper threat" and clearly shows AF Holdings' bad faith.

In a somewhat related argument, Hatfield asserts that AF Holdings unduly delayed in seeking leave to amend. Hatfield contends that AF Holdings knew or should have known of the facts and theories raised by the proposed amendments when it filed the prior versions of the complaint, but that in any event, AF Holdings has known of his identity for more than a year, and nonetheless failed to seek leave to amend to substitute him for the Doe defendant.

Since there has been no discovery relevant to this case since AF Holdings was granted expedited discovery to learn the identities of the owners of the implicated IP addresses in <u>AF Holdings v. Does 1-135</u>, and since AF Holdings previously indicated that Hatfield was a "concededly ignorant" account holder and does not explain what this "new information" is that it claims supports the proposed amendment, Hatfield argues that there is no reason AF Holdings could not have conducted its "investigation" earlier before wasting the time and resources of this court.

8

Hatfield argues in addition that AF Holdings has made no real effort to justify its own delay in this matter, and also has not established that Hatfield will not be prejudiced if the motion is granted. Hatfield contends that unlike the negligence claim, much of the evidence for the copyright claim would consist of "fleeting electronic evidence" which may be lost due to the passage of time, and that allowing AF Holdings to proceed with this claim would thus be prejudicial.

Finally, Hatfield argues that leave to amend would be futile, as AF Holdings is barred by principles of equitable and judicial estoppel from alleging that Hatfield is the infringer of its copyrighted works.

As noted above, in determining whether to grant leave to amend, the court must consider whether the proposed amendment is futile, whether it would cause undue prejudice to the defendant, and whether it is sought by plaintiff in bad faith or with a dilatory motive. These factors do not carry equal weight, as delay, by itself, may be insufficient to justify denial of a motion for leave to amend, and "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003); see also Bowles v. Read, 198 F.3d 752, 758 (9th Cir. 1999). On the other hand, egregious, unexplained delay alone may in certain circumstances provide a sufficient basis for denying leave to amend. See AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 953 (9th Cir. 2006).

With regard to futility, the court is not persuaded by Hatfield's argument that the proposed amendment would be futile based on equitable estoppel and judicial estoppel. Both equitable estoppel and judicial estoppel are affirmative defenses. See, e.g., Powertech Tech. Inc. v. Tessera, Inc., 872 F.Supp. 2d 924, 934-35 (2012) (equitable estoppel); Coble v. DeRosia, 823 F.Supp. 2d 1048, 1050 (E.D. Cal. 2011) (judicial estoppel). For that reason, assuming the court were to grant leave to amend, any such argument would be more appropriately raised in a Rule 12(b)(6) motion to dismiss.

As for Hatfield's argument that he will be prejudiced because of the "fleeting" nature of electronic evidence, AF Holdings asserts in its reply that because Hatfield was previously

9

named as a defendant in the negligence claim, he had an obligation to "preserve evidence" that could be used in this case. However, the negligence claim was dismissed on September 4, 2012, and Hatfield had no continuing duty to preserve evidence after that date.

After AF Holdings filed the present action naming the Doe defendant and Hatfield, but did not sue Hatfield for infringement and even stated that it was not its intention to sue him for infringement, Hatfield had no reason to know, until AF Holdings filed the present motion for leave to amend, that he was in danger of being sued for copyright infringement. This is arguably prejudicial, although it may not be sufficient to qualify as "substantial prejudice" in order to justify denial of leave to amend. See Monongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

The court does find, however, that AF Holdings delayed unduly in seeking leave to amend, and that its conduct is at least suggestive of bad faith. As noted above, the complaint in this action was filed on April 24, 2012. Thus, when AF Holdings filed its motion for leave to amend the complaint to add Hatfield as a defendant and to assert new claims against him – or to substitute Hatfield in place of the Doe defendant – the 120-day limit for service had already passed more than a month previously. Even though the complaint in this case was filed only five months before the motion for leave to amend was filed, there is no dispute that AF Holdings has had the identifying information for Hatfield since it obtained the information in the prior AF Holdings v. Does 1-135 case in October 2011.

While the prior case was dismissed without prejudice, and AF Holdings was thus within its rights to file another suit naming a Doe defendant, AF Holdings did not file a complaint against Hatfield for infringement. Indeed, in the FAC in the present case, filed on June 14, 2012, AF Holdings asserted that it did not know if the Doe defendant was the same individual as Hatfield; and in its July 16, 2012 opposition to Hatfield's motion to dismiss the FAC, AF Holdings stated unequivocally that it was not accusing Hatfield of infringement, and that Hatfield was a "concededly ignorant but alleged careless defendant."

10

It was only after the court dismissed the negligence claim (with the result that no claim remained against Hatfield) that AF Holdings decided that it would sue Hatfield for infringement (unless Hatfield offered a sum of money to settle the case).

In addition, the court notes that the "investigation" AF Holdings claims to have conducted apparently commenced on September 8, 2012 – which was four days after the date the court dismissed the negligence claim and AF Holdings threatened to sue Hatfield as the infringer.

The court finds further that the new allegations in the revised proposed SAC are vague and speculative, and do not demonstrate diligence or add any substance to the claims. The allegation that AF Holdings discovered that Hatfield has "a large Internet presence" is conclusory and appears to be based on pure speculation about social media accounts that may or may not be registered to Hatfield. The lengthy quotation from the rental ad is irrelevant to the claims asserted in the complaint; at most, it simply supports AF Holdings' claim that Hatfield lives in an 8-unit building. In addition, the alleged "research" about Hatfield's "neighbors" is contradicted by the alleged "research" regarding the other residents of the building, as AF Holdings claims to have discovered no information about Hatfield's neighbors, and to have simultaneously learned that "a few [unidentified] tenants" in Hatfield's building were/are running businesses out of their apartments. In any event, this "research" sheds no light on the alleged infringement.

Similarly, the allegation that Hatfield is sharing the apartment with someone of the opposite sex, and that "there is no indication that the two are married" is meaningless, as is the allegation that AF Holdings found "no evidence" that Hatfield has a wireless connection. Finally, the allegation that Hatfield has a criminal record is vague as to the offenses charged or any other details.

In short, the revised proposed SAC alleges no facts showing that Hatfield infringed AF Holdings' copyrighted material, apart from the facts that were previously alleged and that have been known to AF Holdings for more than a year – in particular, that the IP connection through which the material was downloaded is registered to Hatfield.

**CONCLUSION**

In accordance with the foregoing, AF Holdings' motion for leave to file a second amended complaint is DENIED. In addition, for the reasons stated at the hearing, AF Holdings' motion to strike Hatfield's opposition to the motion is DENIED, as is Hatfield's request that the case be dismissed pursuant to Rule 41(b).

**IT IS SO ORDERED.**

Dated: January 7, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge